[No. 19297. Department One. August 18, 1925.]

PAUL MEDGARD et al., *Appellants,* v. O. SHIMOGAKI *et al., Respondents.*[1]

LANDLORD AND TENANT (24)—TERMS FOR YEARS—ASSIGNMENT. An assignment of a lease containing covenants to pay rent for the entire term by the making of improvements does not relieve the lessee from his obligations to pay rent, although the lessor consented to the assignment and accepted rent from the assignee.

SAME (74)—IMPROVEMENTS—BY TENANT—MEASURE OF DAMAGES FOR FAILURE TO MAKE. The measure of damages for a lessee's breach of covenants to pay rent for the full term by the making of improvements is the difference between the value of the land with and without the improvements, rather than the cost of making them, where the plaintiff's claim of damages was general, and his offered proof was as to the difference in the value of the land improved and unimproved.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered March 7, 1925, upon the verdict of a jury rendered in favor of the defendants, in an action for breach of contract. Reversed.

*Martin J. Lund,* for appellants.

*Guie & Halverstadt,* for respondents.

[1]Reported in 238 Pac. 574.

PARKER, J.—The plaintiffs, Medgard and wife, seek recovery of damages from the defendants, Shimogaki and wife, for alleged breach of covenants of a lease of land from the plaintiffs to the defendants, in that the defendants have failed to make improvements upon the land in payment of rent, as agreed upon by the terms of the lease. A trial upon the merits in the superior court for that county sitting with a jury resulted in a verdict denying to the plaintiffs recovery, and a judgment rendered thereon accordingly, from which they have appealed to this court.

On December 4, 1917, a written lease was entered into, by the terms of which the plaintiffs leased to the defendants the land in question, reading, in so far as we need here notice its terms, as follows:

"For the term of six (6) years from the first day of January, 1918, to the first day of January, 1924, on the following terms and conditions, and no other:

"That the said parties of the second part [defendants] have heretofore cleared and ditched creek now running through said land, and $40 is the value agreed to be paid for such work, and that they hereby agree and it is a part of the consideration of this lease that the said parties of the second part shall clear stumps and clean the said land within five (5) years from this date and plow the same or so clear it that it can be plowed to a depth of fourteen (14) inches, and that the said parties of the second part save all the cedars now on the premises and cut them to posts, length seven or eight feet, and fence the said land, using these posts or so much thereof as may be necessary and string four (4) strands of galvanized barb wire, and ditch the said fifteen (15) acres and put the whole tract in cultivation and leave said improvements at the expiration of the term of this lease."

These, we think, are plainly, in legal effect, covenants on the part of the defendants to pay rent for the land for the whole term, by the making of the specified im-

provements. The lease is silent as to the defendants' right of assignment with or without the plaintiffs' consent. On April 8, 1920, the plaintiffs executed a written assignment of their interest in the lease to one Kayano, who thereafter assigned his interest therein to one Ishida. The evidence furnishes room for argument as to whether or not the plaintiffs consented to these assignments and as to whether or not, if any such consent was given, it was of such nature and attended by such an agreement on the part of the plaintiffs as to, in legal effect, constitute a surrender by them of their rights under the rent covenant obligations assumed by the defendants. The evidence also furnishes room for argument as to whether or not the rent covenant obligations of the lease have been performed.

The trial judge gave to the jury the following instruction:

"You are instructed that, where a lease has no provision against assignment, an assignment by the lessee, accepted by the assignee going into possession of the assigned premises, relieves the lessee of all liability under the lease."

This is claimed to have been erroneous, to the prejudice of the plaintiffs. Counsel for the defendants contend, and the trial court seems to have been of the opinion, that our decisions in *Tibbals v. Iffland,* 10 Wash. 451, 39 Pac. 102, and *Harvard Investment Co. v. Smith,* 66 Wash. 429, 119 Pac. 864, are decisive in their favor as to the correctness of this instruction. We do not think so. In each of those cases there was drawn in question only a claim of rent by the landlord against the assignee of the lessee. Neither of those assignees had any covenant obligation whatever running to the landlord, other than the implied obligation to pay rent for whatever period he may have occupied the premises

in question. It is true there is some language in the *Harvard Investment Co.* decision which may seem to lend some support to the contention here made in behalf of the defendants; but such language was unnecessary to the disposition of the case, in view of the recovery there sought being only against the assignee of the lessee and not against the original lessee.

In the later decision of this court in *Johnson v. Norman,* 98 Wash. 331, 167 Pac. 923, the law is assumed to be that a mere assignment of a lease, acceptance of rent by the landlord from the assignee, and the going into possession by the assignee, does not absolve the original lessee from his obligation to pay rent or see that it is paid in full compliance with express covenants which he may have made by the terms of the lease. This, we think, is the law as announced by the overwhelming weight of authority. In the text of 16 R. C. L. 843, we read:

"An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this is true though the assignment is with the consent of the lessor; and although the assignment be by act of law, and the estate be taken from the lessee against his consent, he nevertheless continues liable upon his express covenants. The reason for the continued liability of the lessee is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment, although made with the assent of the lessor, and the lessee still continues liable on his covenant by virtue of the privity of contract."

In 1 Tiffany, Landlord and Tenant, p. 962, that learned author states the law upon this subject as follows:

"Upon an assignment by a lessee, though, as we shall presently see, the assignee becomes liable upon the express covenants of the lessee which 'touch and concern' the land, the lessee remains liable on such covenants, as well as on others, for the reason that one who has subjected himself to a contractual liability cannot divest himself thereof by his own act. The fact that the landlord, either expressly or impliedly, consents to such assignment, as when he gives his consent to the assignment in accordance with a requirement in the lease of such consent, or he accepts rent from the assignee, does not affect the lessee's continuing liability on his stipulations. And an express consent in the instrument of lease to the assignment of the leasehold has no greater effect.

"This principle, that the lessee remains liable on his covenants, is most frequently applied in the case of a covenant to pay rent, upon which the lessee continues liable, and which may be enforced against him in case his assignee fails to perform his duty of paying the rent."

See, 36 C. J. 371, and numerous authorities there cited. See, also, the exhaustive note in 52 L. R. A. (N. S.) 968.

It may be that the jury found that the rent covenants, in the form of the agreement to make improvements, were fully performed; but it may also be that the jury ignored that question and were led by this instruction to deny recovery to the plaintiffs solely because of the assignments, regardless of whether or not the plaintiffs had surrendered their right to have the defendants perform or see to the performance of their rent covenants. We are of the opinion that the instruction was clearly erroneous, and we cannot see but that it was prejudicial to the plaintiffs.

Claim is further made in behalf of the plaintiffs that the trial court erred to their prejudice in giving to the jury the following instruction:

''The measure of damage in this case is the difference in value of the leased land without the alleged improvements and its value with the alleged improvements at the end of the lease term.''

The argument is, in substance, that, instead of prescribing this measure of damages, if any were to be awarded to the plaintiffs, the trial court should have instructed that the measure of damages was the reasonable cost of making the improvements. In view of the fact that the plaintiffs' claim of damages was general and not special, and in view of the fact that the principal proof offered by the plaintiffs touching their measure of damages was the difference between the value of the land with and without the improvements agreed to be made, it seems plain to us that at all events this instruction was a correct statement of the measure of damages in this case.

The judgment of the trial court is reversed and the cause remanded to that court with instructions to award the plaintiffs a new trial.

TOLMAN, C. J., BRIDGES, MACKINTOSH, and MAIN, JJ., concur.