[No. 19726.   Department One.   March 12, 1926.]

# EDITH H. DELANO, *Respondent*, v. M. G. TENNENT *et al.*, *Appellants.*[1]

[1] CORPORATIONS (137)—OFFICERS AND AGENTS—INDIVIDUAL LIABIL-
ITY FOR WRONGFUL ACTS.  Where the assignee of a lease formed
a corporation and turned the premises over to it, he cannot
escape liability for injuries to the premises committed by the
corporation, since it was but his creature and acted as his agent
or servant.

[2] LANDLORD AND TENANT (28)—ASSIGNMENT OF LEASE—CONSTRUC-
TION AND OPERATION OF ASSIGNMENT.  Where the assignee of a
lease assumed its obligations, a change of tenancy releasing him
therefrom is not shown by the fact that the rent was paid by
checks of a corporation, which he formed and which went into
possession of the premises.

[3] SAME (28).  The assignee of a lease, assuming its obligations,
with the consent of the lessor, is not released therefrom by an
assignment of the lease to another.

[4] SAME (66)—IMPROVEMENTS BY TENANT—RIGHT TO REMOVE.  Under
a lease of a foundry building, requiring the tenant to leave the
premises in as good condition as they were in when leased or
as they might thereafter "be put into" by the tenant, the tenant
has no right to remove additions to the main building, an oven,
a transformer, crane and hoist, which could not be removed
without destroying the clay floor and weakening the supports
of the building.

[5] SAME (64)—COVENANTS AND AGREEMENTS AS TO IMPROVEMENTS—
DAMAGES FOR REMOVAL.  The measure of damages for breach of
the covenants of a lease to leave the premises in as good con-
dition as when leased is the cost of putting them in such con-
dition.

[6] SAME (64)—WASTE—MEASURE OF DAMAGES.  A tenant, in re-
moving fixtures and improvements under the mistaken notion
that he had the right to do so, is not guilty of committing
"waste," within Rem. Comp. Stat., § 938, awarding treble dam-
ages for waste by a tenant, since the act in its entirety, was
intended to permit treble damages only where the waste was
wilful or wanton, which does not appear.

[1]Reported in 244 Pac. 273.

[7] HUSBAND AND WIFE (94)—COMMUNITY PROPERTY—JUDGMENT—
AGAINST WIFE. In an action against a tenant and his wife for
breach of his covenants in a lease, it is error to enter against
the wife a personal judgment, which should run only against
the community and the husband.

Cross-appeals from a judgment of the superior court
for Pierce county, Card, J., entered June 19, 1925, in
favor of plaintiff, in an action for damages for injuries
to leased premises, tried to the court. Reversed as to
appellant Agnes Tennent.

*Lyle, Henderson & Carnahan,* for appellants.

*Rex S. Roudebush (Chas. Bedford,* of counsel), for
respondent and cross-appellant.

FULLERTON, J.—On August 7, 1919, the Safety In-
vestment Company, a corporation, being then the
owner of certain real property situated in the city of
Tacoma, on which there were certain buildings, leased
the property for a term of five years to the Malleable
Steel & Iron Company, also a corporation. As a con-
sideration for the lease, the latter company agreed to
pay in advance, as rental, eighty dollars per month on
the first day of each and every month; agreed to pay
all taxes and assessments that might be levied upon
the property and the buildings thereon, accruing dur-
ing the term of the lease; agreed to keep the buildings
on the property insured; agreed not to commit or
suffer waste; agreed to quit and surrender the prem-
ises at the end of the term in as good order and con-
dition as they then were, or might "be put into;"
agreed to take the buildings on the premises as they
then were; agreed that, if changes, additions, or re-
pairs were necessary or desirable, to bear the expense
of making the same, and agreed not to assign the lease
without the written consent of the lessor.

On October 10, 1919, the Safety Investment Company sold and conveyed the property to the respondent, Edith H. DeLano, subject to the lease, and assigned to her its interest in the lease. The Malleable Steel & Iron Company held the property under the lease until August 13, 1920, paying the rental to the lessor as long as it owned the property, and subsequent thereto to the respondent. On the date last given, the lessee, with the written consent of Mrs. DeLano, assigned all of its interest in the lease to the appellant, M. G. Tennent; he, by the conditions of the written assignment, agreeing to assume and carry out all of the obligations of the lease according to its terms.

The appellant, on acquiring title to the leasehold interest, organized a corporation under the name of Tennent Steel Casting Company, and this corporation entered into possession of the property and held it for the remainder of the term. The buildings on the premises were erected for the purpose of conducting a foundry, and for this purpose the premises were used by the occupants under the lease. During the time the property was in the possession of the lessees, a number of structures were erected on the premises, useful in the business of conducting a foundry. These, in part, consisted of a core oven, an electrical transformer, a jib crane and a hoist. There were also erected a number of structures in the form of additions to the main buildings, and one building was erected which was not joined to the main building, but which was used in conjunction therewith. The floor of the main building was made of clay, three or four inches thick, as a protection against fires arising from moulding processes.

The Tennent Steel Casting Company, about a year prior to the expiration of the lease, moved from the leased premises to another site in the city of Tacoma,

quitting entirely further use of the leased premises. The monthly rental, however, was paid regularly until the expiration of the lease. On removing from the premises, the Tennent Steel Casting Company tore down and carried away all of the new structures erected during the time the lessees were in possession. It also tore down the core oven, destroyed the transformer and removed all that was valuable of the materials of which it was composed; practically destroyed the clay floor, removed the crane and hoist, weakened the supports of the main building, and left the premises covered with debris. In fact, as we view the evidence, the structures on the premises were practically destroyed, leaving the premises unfit for foundry purposes, or for any useful purpose, without extensive and costly replacements and repairs. The destruction committed, however, was the natural result of removing the structures.

The lessor, DeLano, according to her testimony, did not learn of the demolished condition in which the structures on the premises were left, until after the expiration of the lease. On so learning, she began the present action against M. G. Tennent individually, and against him and his wife as a community, to recover in damages for the injury to the premises. She recovered in the sum of $1,620, with costs of the action. Both of the parties appeal.

[1] Noticing the appeal of the defendants, it is first contended that they are not liable for the wrongful injuries to the property, even conceding that any such wrongful injury was committed. It is argued that, to maintain the action, it was necessary to show that the relation of landlord and tenant existed between them and the owner of the premises, and that no such relation was shown; that neither of the de-

fendants had any covenant obligations whatever running to the plaintiff, and that neither of them entered into the possession of the property, or paid rent therefor.

But we cannot follow the argument. It is possibly true that, after the appellant, M. G. Tennent, received an assignment of the lease, the Tennent Steel Casting Company took possession of the premises, and that it was this company who demolished the structures on the premises on removing therefrom. But the assignment of the lease was made to M. G. Tennent, and he, as we have shown, assumed the obligations of the lease. The corporation which entered into possession of the premises was but his creature, and it entered under his direction and with his consent. As between the plaintiff and himself, therefore, the corporation was either his agent or his servant, and in either event he is answerable to the plaintiff for any wrongful injury done to the premises by the corporation. It is not the rule that a lessee of premises may escape the covenants of his lease by assigning his lease to another, or by placing another in possession of the leased premises. Liability can be escaped only by a new contract. This must be an agreement that the landlord will accept the other as the responsible party under the lease, and an agreement that the lessee will be released from his obligations thereunder. As we said in *Wooding v. Crain*, 10 Wash. 35, 38 Pac. 756:

"The second proposition of appellant, that the respondent could escape his liability by assigning his interest in the contract to a third party, cannot be sustained under any authority we know of. There is a vast difference between the rights of the assignee and the liability of the assignor under the original contract. The contracting party assumes certain obligations which the party with whom he has contracted

has a right to enforce, and he certainly cannot escape these obligations by any assignment, and compel the original contractor to look to other parties than the parties with whom he contracts. A vendor in a case of this kind might be willing to contract with Jones, because of his known responsibility, and unwilling to contract with Smith because of his known irresponsibility, and it would be a strange and novel principle of law that would compel him to look to an irresponsible person for the performance of a contract, and for damages for its breach, when he had taken the precaution to contract with a responsible person.''

[2]　In this instance, there were no contractual relations between the Tennent Steel Casting Co. and the plaintiff. Nor did the plaintiff ever recognize it as her tenant in such a manner as to imply a substitution of tenancy. The most that appears in this respect is that the checks sent to the plaintiff in payment of rent were, for the greater part, the checks of the corporation. But this is not sufficient to show a change of tenancy. The defendant Tennent cannot be released from the obligation he assumed to perform in the covenants of the lease by a contract less formal than that by which he became so obligated, or by such acts and circumstances so far definite as to imply necessarily such a release. The payment of rental by another, and the receipt of the rental paid without protest, are not of this nature.

[3]　But it is said that Tennent, since he was himself an assignee of the original lease, could relieve himself of the covenants of the lease by an assignment of the lease to another person. But this is the rule only in those instances where the assignor has not assumed the covenants of the lease, and has no other obligation than the obligation to perform such covenants during the time he occupies the premises. *Tibbals v. Iffland,*

10 Wash. 451, 39 Pac. 102; *Medgard v. Shimogaki,* 135
Wash. 527, 238 Pac. 574.

Here, as we have shown, Tennent was not such an
assignee. He took the assignment with the consent of
the landlord, and as a consideration for that consent
agreed to assume and perform all of the covenants of
the lease. He thus assumed the relation of an original
lessee, and cannot escape the obligation of perform-
ance by merely assigning his lease.

[4] It is next argued, that the structures destroyed
and removed were not structures of such a permanent
nature that they could not be removed during the time
of the lease. But we think they were so, both under
the general rule and under the covenants of the lease.
In order to remove them, it was necessary to prac-
tically demolish the original structure, which of itself
shows that they were so far a part of the building that
they could not be removed without material injury
thereto; that is to say, it so shows unless the lessee
intended to, and did, inflict a wilful and wanton injury
to the premises, an accusation which he denies, and
an accusation of which we willingly acquit him. Again,
by the covenants of the lease, the lessee agreed to quit
and surrender the premises at the termination of the
lease in as good condition as they were at the time of
the execution of the lease, or as they might be there-
after "be put into" by the tenant. This clause of the
lease required the tenant to leave on the premises all
additions to the main building, and all structures in
the nature of trade fixtures which could not be removed
without injury to the building or without lessening its
value, and certainly included all of the fixtures and
structures that are here in question.

[5] The defendants complain that the court adopted
a wrong measure of damages. It is said that the

measure of damages is not the cost of replacing the fixtures removed, but is the difference between the value of the premises before fixtures were removed and the value after that event, and that here there was no showing to this effect. The authorities seem not to be in accord as to what is the proper measure of damages for a breach of the covenants of a lease; but in 36 C. J. 203, § 873, it is laid down as a general rule that the measure of damages for a breach of the lessee's covenant to leave the premises in a particular condition is the cost of putting them into the condition in which they were agreed to be left. The trial court followed this rule in the instant case, and we hold that it did not err in so doing.

It is objected that the evidence is insufficient to sustain the amount of the recovery, but the question does not require extended discussion. It is sufficient to say that we think the court made a fair and just award.

[6] Plaintiff on her appeal makes two contentions: first, that the award of damages is insufficient, and second, that the court should have trebled the damages awarded. On the first of the questions, we are content with our answer to the objection of the defendants that they are excessive. The second contention is founded on § 938 of the code (Rem. Comp. Stat.). This section provides that, if a tenant in severalty or in common of real property for life or for years commits waste thereon, any person injured thereby may maintain an action at law for damages therefor against such tenant, and further provides that in such action "there may be judgment for treble damages." But we cannot conclude that it is applicable to the facts here shown. The section in its present form first appears in the territorial Laws of 1869, p. 143, and has received no legislative modification since that time. Its language, as will be

observed from the part we have quoted, is permissive rather than mandatory, and a reading of the entire act of which it forms a part convinces us that it was the legislative intent to provide for the punishment of wilful and wanton acts resulting in waste, rather than to make treble damages the ordinary measure in instances where the waste was the result of a mistaken view of rights entertained in good faith. This court early in its history announced the doctrine that the rule allowing recovery of exemplary and punitive damages was unsound in principle, and held that such damages were not recoverable in this jurisdiction, unless expressly so provided by statute. See the cases collected in Remington's Washington Digest, Title, Damages, §§ 40, 42. In this instance, as we have shown, the statute permits recovery in treble damages only where the waste is wilful and wanton, and the record does not show that the waste here committed was of that sort.

[7] The court entered a personal judgment against the defendant Agnes Tennent. This is concededly erroneous. The judgment should run against M. G. Tennent personally, and against the community composed of M. G. Tennent and Agnes Tennent, and must be modified so as to relieve Agnes Tennent of personal liability.

[6] Since, however, the error was evidently the result of an oversight, it will not be permitted to affect the allowance of costs incurred on the appeals. Since both parties have appealed and since we make no material modification of the judgment, neither party is entitled to costs in this court.

The judgment is reversed, and remanded with instructions to modify the judgment as above indicated.

TOLMAN, C. J., HOLCOMB, MAIN, and MITCHELL, JJ., concur.