[No. 23620.   Department One.   September 20, 1932.]

ROBERT J. HUSTON *et al., Respondents*, v. JOHN GRAHAM *et al., Appellants,* GENERAL LEASEHOLD CORPORATION, *Defendant.*[1]

[1]Reported in 14 P. (2d) 44.

522

*Bronson, Jones & Bronson,* for appellants.

*Thomas S. Grant,* and *Poe, Falknor, Falknor & Emory,* for respondents.

MITCHELL, J.—On July 23, 1925, Robert J. Huston and wife and Mrs. Lizzie G. Grant, as owners, executed and delivered a written lease to John Graham covering lot 2, block 43, in the Second Addition as platted by the heirs of Sarah A. Bell to Seattle, Washington. The term was ninety-nine years, at a rental of one hundred and fifty dollars a month for the first ten years and two hundred and fifty dollars a month thereafter. Possession of the premises was delivered to the lessee. On December 4, 1929, John Graham and wife, by a written instrument, duly assigned their interest in the lease to General Leasehold Corporation, a corporation, practically all of the capital stock of which corporation was owned by John Graham. Thereafter, for several months, the lessors received the monthly rentals from the General Leasehold Corporation.

On account of defaults in the payment of rent, this action was commenced to recover for rent due for August, 1930, and subsequent months, and to recover for certain delinquent taxes and local improvement assessments that the lessee was obligated to pay according to the covenants in the lease. The lease contract was declared upon and made a part of the complaint.

The action was brought against John Graham and

his wife and General Leasehold Corporation. John Graham and wife filed an answer and cross-complaint, admitting the execution of the lease, denying other material allegations of the complaint, and by way of both affirmative defense and cross-complaint alleged that the lease as signed was executed under a mutual mistake of the parties; that the true agreement was that the lessee should have the right to assign and transfer the lease at any time, after which the lessee should not be responsible to the lessors for any obligation mentioned in the lease; and that the lease was executed by the lessee upon the representation of the lessors that the lease expressed that intention and understanding. The prayer of the answer was that plaintiffs take nothing against Graham and his wife, while the prayer of the cross-complaint was that the written lease be reformed in the particulars mentioned. The plaintiffs by a reply denied the allegations of the cross-complaint.

On the trial, findings of fact in favor of the plaintiffs were signed and filed, upon which conclusions and judgment were drawn and entered that the plaintiffs have a money judgment against John Graham and his wife and General Leasehold Corporation, a corporation, with costs, stating the amounts, and that the cross-complaint of John Graham and wife be dismissed with prejudice. John Graham and wife have appealed.

█ The assignment that the court erred in denying reformation of the lease on the ground of mutual mistake is not meritorious, in our opinion. The findings and conclusion of the trial court were against that contention. The evidence introduced to support the claim was not clear, cogent and convincing, as required by the accepted rule. *Herzberg v. Moore,* 153 Wash. 641, 280 Pac. 41; *Robinson Lettuce Farms v. Symons,* 163 Wash. 351, 1 P. (2d) 300. That allegation in the

cross-complaint or the one that there was a misrepresentation on the part of the lessors of the contents of the written instrument was not sustained by a preponderance of the evidence, as we view it.

It is objected that the evidence is insufficient to warrant any recovery against the appellants for rent accruing after the acceptance by respondents of rent from the assignee of the lessee. There was no consent on the part of the lessors to the assignment, nor release of the lessee. The contention of the appellants cannot be sustained. *Johnson v. Norman,* 98 Wash. 331, 167 Pac. 923; *DeLano v. Tennent,* 138 Wash. 39, 244 Pac. 273, 45 A. L. R. 766; *Medgard v. Shimogaki,* 135 Wash. 527, 238 Pac. 574.

More precisely or fully stated, the contention of appellants is that they did not *expressly covenant and agree to pay* rent, taxes and assessments, according to the terms of the lease, and that, therefore, they are not liable for such accruing after the assignment of the lease by them. As to this claim that there was no express agreement to pay, some of the terms of the lease may be examined. The lease is too long to be set out in full.

It was signed by all the parties, lessors and lessee. It provided that the lessors, Robert J. Huston and Hattie A. Huston, his wife, and Lizzie G. Grant, demise and let unto the lessee, John Graham, the premises, describing them, for ninety-nine years, upon terms, covenants and conditions set out in the instrument: "First, *the lessee to pay* rent for said premises during the first ten year period thereof, in the sum of $1800.00 per annum," etc. The language "the lessee to pay rent" is plain, and has a prominent place in the written instrument. Surely, it expresses and means something, and we are not at liberty under the guise of construction to convert that something into nothing.

The words must not be destroyed altogether, nor forgotten. Someone is to pay rent. Who? The lessee, because the writing says so. What less or different could be intended by that language than that John Graham, named and who signed as lessee, promised and agreed to pay the rent? No precise language is necessary to create a promise or covenant, the intention may be gathered from the whole instrument. As said in *Dement Brothers Co. v. Coon,* 104 Wash. 603, 177 Pac. 354:

"The rule by which we determine the intent of the parties and the meaning, or lack of meaning, of such a written instrument does not encourage an attempt to charm or transform it into a word puzzle, nor to do otherwise than take the words and signatures in their ordinary, everyday, popular sense."

Attention has been called by counsel on both sides to a number of authorities construing leases of real property, in this respect. They differ more in details than principles and conclusions. None of them, however, can lead one to turn aside the plain language of the lease in this case. One of the most instructive authorities is *Samuels v. Ottinger,* 169 Cal. 209, 146 Pac. 638, Ann. Cas. 1916E 830. The facts in that case and the language of the lease make it strikingly similar to the present one. Certain portions of the opinion in that case that may be appropriately applied to the present one are enough to show our views upon the subject, as follows:

"The single question presented for decision is whether the defendants, the original lessees, are absolved from liability to pay rent by their assignment to Altschular, and the payment by Altschular to the lessor of one month's rent. The general rule of law governing the controversy is settled beyond the possibility of dispute."

Again,

"The test of the assigning lessee's liability is, then, whether he has, in the lease, agreed to pay rent during the term. The rule of law is sometimes phrased thus: The obligation to pay rent remains on the lessee, after his assignment, when the obligation was created by his express agreement. It does not survive an assignment with the lessor's consent when the obligation is implied. By 'express agreement,' in this connection, is meant not merely a promise, in exact words, to pay a given sum as rental; any language necessarily importing an undertaking on the part of the lessee to pay the rent will satisfy the requirement of the rule. For the distinction to which we have referred rests on the nature of the lessee's obligation."

Again,

"The lease in question was executed by the lessees, as well as by the lessor. It begins by stating that the lessor leases the premises to the lessees, for the term of ten years, at the monthly rental above stated, 'payable in advance on the twentieth day of each and every month'."

And, again:

"If it is possible to express a contractual obligation to pay rent by any form of words other than a direct promise, in exact terms, to pay such rent, the language we have quoted from the lease before us, imposes that obligation on the lessees. The lessor agrees to lease the premises to the lessees at a given rental, 'payable' at stated times. The writing is signed by the lessees as well as by the lessor. Where both parties sign an agreement whereby one agrees to sell to the other a tract of land at a certain price, and to convey a good title upon payment of that price, the writing, as has been held in this court, imposes upon the vendee the obligation to buy and pay for the land, although he has not in words agreed to buy or to pay. (*Preble v. Abrahams,* 88 Cal. 245 [22 Am. St. Rep. 301, 26 Pac. 99]; see, also, *King Keystone Oil Co. v. San Francisco Brick Co.,* 148 Cal. 87 [82 Pac. 839].)"

The next paragraph of the lease in the present case says:

"Second: In addition to the aforesaid rent, the said lessee shall pay before delinquency, all taxes, local improvement assessments," etc.

What we have said about the promise to pay rent is equally applicable to the payment of taxes and local assessments, under the terms of the lease. That is, the lessee agreed to pay them. Upon consideration of the whole contract, it may be said of the obligation of the lessee to pay rent, taxes and local improvement assessments as was said in *Samuels v. Ottinger,* 169 Cal. 209, 146 Pac. 638, Ann. Cas. 1916E 830, of the rent,

" . . . but beyond this, there are various other provisions in the lease plainly indicating the intention and understanding of the parties that the lessees were bound to pay the rent."

The third assignment is that the court erred in entering judgment for the amount of delinquent taxes and local improvement assessments. It appears that, at the trial, respondents offered statements from the treasurer's office showing the amount of delinquent assessments against the property. Upon the court's question if they were offered for the purpose of showing breach of the terms of the lease and the question being answered in the affirmative on behalf of the respondents, the appellants stated that they had no objection, for that purpose. The treasurer's statements were admitted. Now appellants contend that, admitting the proof was sufficient to show a breach of the lease to pay taxes and assessments, they do not constitute proof of the amount of delinquent taxes and assessments; and that to accept them for that purpose, goes beyond the scope of the offer.

But upon considering the whole of the record as to what occurred at that time, the contention, in our

opinion, is too technical. The trial court did not understand the offer was so limited, else upon a motion for a new trial, which was denied, relief would have been granted. The proof in our opinion was valueless to show a breach of the contract without at the same time taking into consideration the amount. It would be most unusual, if not unreasonable, under the offer as made, to attempt to disassociate the fact of delinquency from the amount of it, and in our opinion it was not so intended.

Judgment affirmed.

TOLMAN, C. J., HERMAN, PARKER, and STEINERT, JJ., concur.

