[No. 25317.   Department One.   December 4, 1934.]

E. G. JOHNSON et al., Respondents, v. ALFRED GODDARD et al., Appellants, W. C. HINMAN et al., Defendants.[1]

[1]Reported in 38 P. (2d) 208.

*Gates & Montgomery,* for appellants.
*Poe, Falknor, Falknor & Emory,* for respondents.

MILLARD, J.—On March 24, 1927, plaintiffs, a marital community, executed a written lease to Alfred Goddard and wife, covering certain real estate owned by the lessors in the city of Seattle. The term was ninety-nine years, at a monthly rental of one hundred dollars for the first five years, one hundred and twenty-five dollars a month for the next ten years, and one hundred and fifty dollars a month thereafter.

Possession of the premises was delivered to the lessees, who remained in possession thereof until May, 1933, when they, by a written instrument, assigned their interest in the lease to W. C. Hinman. There was no consent on the part of the lessors to that assignment, nor did the lessors execute a release of the lessees from any of their contractual obligations under the lease. Hinman took possession of the premises June 1, 1933, and remained in possession thereof until December 31, 1933. It appears that Hinman paid all rentals due under the lease during his period of possession, with the exception of a part of the December rent.

In October, 1933, an action was commenced—the cause came on for trial and judgment was entered in April, 1934—by the lessors to recover against their lessees and the lessees' assignee for rentals, taxes and local improvement assessments which had accrued, and in payment of which the lessees had defaulted. The trial court found that plaintiffs were entitled to a recovery against lessees Goddard for balance of rental for the month of December, 1933, the rent for the months of January, February, March and April, 1934, unpaid taxes, delinquent local improvement as-

sessments and a fire insurance policy premium. The court also found that plaintiffs were entitled to recovery against Hinman and wife for the balance of the December, 1933, rental and for an unpaid installment of a local improvement assessment. which matured November 17, 1933. During the trial of the cause, it was learned for the first time that Hinman transferred the lease to Albert Wilson. Plaintiffs were never notified of that assignment, and it appears that Hinman continued collection of rentals for Wilson, who was not made a party defendant. From judgment entered on the findings, defendants Goddard appealed.

█ Appellants contend that they did not expressly covenant and agree to pay the rentals, taxes, assessments and insurance premiums accruing throughout the term of the lease, therefore they are not liable for those items after assignment of the lease and surrender of their estate thereunder to defendant Hinman; that is, if a lessee's obligation to pay rests only on an implied obligation, this will not survive a termination of the privity of estate between the lessor and the lessee by assignment of the balance of the term with the consent of the lessor. Appellants invoke, to sustain their position, the rule that,

"In the absence of an express covenant to pay rent, if the lessee parts with his estate, with the consent of the lessor, the privity of estate is thereby destroyed, and the lessee is not further obligated to pay rent, since there is nothing upon which to base the implied obligation. Especially is this the case where the landlord has accepted rent from the assignee. This rule is not affected by the financial character of the assignee or by the intent with which the assignment is made, but the lessee cannot discharge himself from liability for future rent by an assignment of the lease without the lessor's consent." 36 C. J. 373, § 1228.

See, also, 16 R. C. L., p. 844, § 344.

We held in *Huston v. Graham,* 169 Wash. 521, 14 P. (2d) 44, which is determinative of the case at bar, that where, in the lease, the lessee expressly agrees to pay rent during the term, the obligation to pay rent remains on the lessee after his assignment, and that no precise language is necessary to create a promise or covenant, as that intention may be gathered from the whole instrument. The same contention was made in that case as is made in the case at bar. The two cases are not distinguishable in principle.

We quote the following pertinent language from the lease in the case at bar, which language constitutes an express agreement by appellant lessees to pay the rental and other charges under the contract during the term of that leasing contract:

"That, for and in consideration of the mutual covenants and agreements herein contained and other good and valuable considerations, the lessors hereby lease and demise unto the said lessee, and said lessee hereby takes and hires from the said lessors the following described premises in the city of Seattle, . . .

"To Have and to Hold the above demised and described premises with the rights, privileges, easements and appurtenances thereunto belonging or in any wise appertaining unto the lessee for the term of ninety-nine (99) years from and after the First day of April, 1927, and ending the Thirty-first day of March, 2025, *and it is hereby mutually agreed* by and between the lessors and the lessee that this lease is made upon the following terms and conditions, to-wit:

"First. The rent to be paid for said premises for said term of ninety-nine years shall be the sum of One Hundred Dollars ($100) per month for each and every month during the first five years of said term; the sum of One Hundred Twenty-five Dollars ($125) for each and every month for the next or following ten years; the sum of One Hundred Fifty Dollars ($150) per month for each and every month during the balance

of said term of this lease. *All of said monthly rentals to be paid monthly in advance on the first day of each and every month at such place as the lessors shall in writing designate."* (Italics ours.)

That is to say, the lessee rents the property for a term of ninety-nine years, and agrees that *all* of the *monthly payments* shall be paid on the first day of each and every month for the term of ninety-nine years. The lease next provides that

"The *lessee* shall pay all taxes levied or assessed against the said premises, . . . and the *lessee* shall also pay all local improvement and other assessments, . . . before they would otherwise become delinquent."

The contract further provides:

"The lessee shall and hereby agrees to deposit with the lessors upon the execution of these presents the sum of Fifteen Hundred Dollars ($1500) as guarantee of the performance of the terms and conditions of this lease; . . .

"The lessee agrees at its own expense, at all times during the term of this lease, to procure and maintain insurance against loss by fire on any building or buildings which it may hereafter erect upon said premises . . .

"The rent reserved herein is ground rent and is not based upon value of any buildings to be placed upon said premises and, therefore, all rent reserved shall be paid during the entire term regardless of whether or not any building placed upon said premises is destroyed."

That the case at bar is controlled by *Huston v. Graham,* 169 Wash. 521, 14 P. (2d) 44, clearly appears from what we said, as follows, in the opinion in that case:

"More precisely or fully stated, the contention of appellants is that they did not *expressly covenant and agree to pay* rent, taxes and assessments, according to the terms of the lease, and that, therefore, they are

not liable for such accruing after the assignment of the lease by them. As to this claim that there was no express agreement to pay, some of the terms of the lease may be examined. The lease is too long to be set out in full.

"It was signed by all the parties, lessors and lessee. It provided that the lessors, Robert J. Huston and Hattie A. Huston, his wife, and Lizzie G. Grant, demise and let unto the lessee, John Graham, the premises, describing them, for ninety-nine years, upon terms, covenants and conditions set out in the instrument: 'First, *the lessee to pay* rent for said premises during the first ten year period thereof, in the sum of $1800.00 per annum,' etc. The language 'the lessee to pay rent' is plain, and has a prominent place in the written instrument. Surely, it expresses and means something, and we are not at liberty under the guise of construction to convert that something into nothing. The words must not be destroyed altogether, nor forgotten. Someone is to pay rent. Who? The lessee, because the writing says so. What less or different could be intended by that language than that John Graham, named and who signed as lessee, promised and agreed to pay the rent? No precise language is necessary to create a promise or covenant, the intention may be gathered from the whole instrument.

. . .

"Attention has been called by counsel on both sides to a number of authorities construing leases of real property, in this respect. They differ more in details than principles and conclusions. None of them, however, can lead one to turn aside the plain language of the lease in this case. One of the most instructive authorities is *Samuels v. Ottinger,* 169 Cal. 209, 146 Pac. 638, Ann. Cas. 1916E 830. The facts in that case and the language of the lease make it strikingly similar to the present one. Certain portions of the opinion in that case that may be appropriately applied to the present one are enough to show our views upon the subject, as follows:

" 'The single question presented for decision is whether the defendants, the original lessees, are absolved from liability to pay rent by their assignment to

Altschular, and the payment by Altschular to the lessor of one month's rent. The general rule of law governing the controversy is settled beyond the possibility of dispute.'

"Again,

" 'The test of the assigning lessee's liability is, then, whether he has, in the lease, agreed to pay rent during the term. The rule of law is sometimes phrased thus: The obligation to pay rent remains on the lessee, after his assignment, when the obligation was created by his express agreement. It does not survive an assignment with the lessor's consent when the obligation is implied. By "express agreement", in this connection, is meant not merely a promise, in exact words, to pay a given sum as rental; any language necessarily importing an undertaking on the part of the lessee to pay the rent will satisfy the requirement of the rule. For the distinction to which we have referred rests on the nature of the lessee's obligation.'

"Again,

" 'The lease in question was executed by the lessees, as well as by the lessor. It begins by stating that the lessor leases the premises to the lessees, for the term of ten years, at the monthly rental above stated, "payable in advance on the twentieth day of each and every month".'

"And, again:

" 'If it is possible to express a contractual obligation to pay rent by any form of words other than a direct promise, in exact terms, to pay such rent, the language we have quoted from the lease before us, imposes that obligation on the lessees. The lessor agrees to lease the premises to the lessees at a given rental, "payable" at stated times. The writing is signed by the lessees as well as by the lessor. Where both parties sign an agreement whereby one agrees to sell to the other a tract of land at a certain price, and to convey a good title upon payment of that price, the writing, as has been held in this court, imposes upon the vendee the obligation to buy and pay for the land, although he has not in words agreed to buy or to pay. (*Preble v. Abrahams*, 88 Cal. 245 [22 Am. St.

Rep. 301, 26 Pac. 99]; see, also, *King Keystone Oil Co. v. San Francisco Brick Co.,* 148 Cal. 87 [82 Pac. 839].)'

"The next paragraph of the lease in the present case says:

" 'Second: In addition to the aforesaid rent, the said lessee shall pay before delinquency, all taxes, local improvement assessments,' etc.

"What we have said about the promise to pay rent is equally applicable to the payment of taxes and local assessments, under the terms of the lease. That is, the lessee agreed to pay them. Upon consideration of the whole contract, it may be said of the obligation of the lessee to pay rent, taxes and local improvement assessments as was said in *Samuels v. Ottinger,* 169 Cal. 209, 146 Pac. 638, Ann. Cas. 1916E 830, of the rent,

" '. . . but beyond this, there are various other provisions in the lease plainly indicating the intention and understanding of the parties that the lessees were bound to pay the rent.' "

■ The acceptance by respondent lessors of rent for May, 1933, to December, 1933, from the assignee of appellant lessees does not relieve the original lessees (appellants) of their obligation under the lease to pay rent.

"In the later decision of this court in *Johnson v. Norman,* 98 Wash. 331, 167 Pac. 923, the law is assumed to be that a mere assignment of a lease, acceptance of rent by the landlord from the assignee, and the going into possession by the assignee, does not absolve the original lessee from his obligation to pay rent or see that it is paid in full compliance with express covenants which he may have made by the terms of the lease. This, we think, is the law as announced by the overwhelming weight of authority. In the text of 16 R. C. L. 843, we read:

" 'An assignment by the lessee does not affect his subsequent liability upon the express covenants contained in the lease, and this is true though the assignment is with the consent of the lessor; and although

the assignment be by act of law, and the estate be taken from the lessee against his consent, he nevertheless continues liable upon his express covenants. The reason for the continued liability of the lessee is that although by the assignment the privity of estate between lessor and lessee is terminated, there still remains the privity of contract between them created by the lease, which is not affected by the assignment, although made with the assent of the lessor, and the lessee still continues liable on his covenant by virtue of the privity of contract.' " *Medgard v. Shimogaki,* 135 Wash. 527, 238 Pac. 574.

The judgment is affirmed.

BEALS, C. J., MAIN, HOLCOMB, and GERAGHTY, JJ., concur.