[No. 9493.  Department Two.  June 23, 1911.]

KNEELAND INVESTMENT COMPANY, *Respondent*, v.
BYRON L. ALDRICH *et al.*, *Appellants*.[1]

LANDLORD AND TENANT—RENT—PERSONS ENTITLED.  A transfer of the reversion of leased premises does not carry the right to accrued rents, where they are not mentioned in the deed.

LANDLORD AND TENANT—LEASE—RENT—TIME FOR PAYMENT—ESTOPPEL—UNLAWFUL DETAINER.  Where a lease for one year at a monthly rental "payable monthly in advance," was executed on the 11th of the month and possession taken on the 15th and rent was paid for the last half of the first month, and thereafter was demanded and paid in advance on the first day of each calendar month for several months without question, the lease will be construed as calling for payments on the first of each calendar month, and the lessee is estopped to assert that notice in unlawful detainer on the 7th, not objected to at the time, was premature; especially where at the trial no issue as to the time of payment or sufficiency of notice was raised by the pleadings, evidence, or requests for findings.

LANDLORD AND TENANT—UNLAWFUL DETAINER—RENT—DEFAULT—EXCUSE FOR NONPAYMENT.  Where a lease of a hotel provided for the retention of specified rooms until vacated by the present occupant, in which event the lessee was to be given possession of the rooms, upon surrendering to the lessor certain other rooms in lieu thereof, the lessee must demand possession and offer to surrender the other rooms in exchange in order to evade eviction for nonpayment of rent; and a mere inquiry of a clerk of the lessor as to when possession would be given is not a sufficient demand.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered September 28, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for unlawful detainer.   Modified.

*H. F. Norris* and *T. W. Hammond,* for appellants.

*G. C. Israel, Frank C. Owings,* and *Thos. L. O'Leary,* for respondent.

[1]Reported in 116 Pac. 264.

ELLIS, J.—Action for unlawful detainer of leased premises and for unpaid rent. It appears from the record that on February 11, 1910, W. H. Kneeland and wife, by written lease, let certain parts of the Kneeland Hotel building, in Olympia, Washington, to appellants and one J. F. Fuhrman, for a period of one year from February 15, 1910. The lease consists of two separate instruments executed at the same time, both in duplicate, one being the lease proper, and the other a memorandum of agreement relative to heat and janitor service to be furnished by tenants for parts of the building not leased to them, and other matters which will be noted hereinafter. The appellants went into possession under the lease on the 15th day of February, 1910. The lease proper contains the following provision:

"The party of the second part is to have and to hold this property for the uses and purposes of the conduct of a first class hotel and for no other purposes, for the period of one year at the monthly rental of $192 per month, payable monthly in advance, with the further understanding and agreement that the rent of the last three months of the terms for which they lease is made to wit: The sum of $576 is paid in advance and the paying of the $576 shall not in any way affect the monthly payments of rent as herein above provided for, until all the rent provided for in this lease has been paid excepting the last three months."

The memorandum of agreement contained the following:

"It is further understood and agreed between W. H. Kneeland the party of the first part and Lillie B. Aldrich, J. F. Fuhrman and Byron Aldrich, parties of the second part, that the United States Government may continue to use the suite of rooms now being used by them on the fourth floor of the said Kneeland Hotel as long as they wish to, and that the said W. H. Kneeland shall have the rent therefor, and in lieu thereof the said Lillie B. Aldrich, J. F. Fuhrman and Byron Aldrich shall have the number of rooms number eighteen, nineteen, twenty on the second floor without additional rent, but when the United States Government shall vacate the rooms above mentioned on the fourth floor, the right to use the said rooms shall revert to the said Lillie B. Aldrich

and F. J. Fuhrman and Byron Aldrich and that they shall vacate and turn over to the said W. H. Kneeland or his representatives rooms number 18, 19 & 20."

These provisions are the only parts of the lease and memorandum directly pertinent to the matters involved in this appeal.

The rent for the last half of February and for the months of March and April has been paid. Of the rent for May, $100 was paid, leaving an unpaid balance of $92 for that month. The April rent was paid in advance on the first day of that month. On May 16, 1910, W. H. Kneeland and wife conveyed the leased premises to the respondent, Kneeland Investment Company. George W. Draham, the president and manager of the Kneeland Investment Company, on the 1st day of June, presented to Mrs. Aldrich, who it is admitted was the principal manager of the hotel for the appellants, a bill for the balance of the May rent and for the rent for the month of June. He testified that he presented this bill to her in person and demanded payment at that time; that she said she could not pay it all, but offered to pay $40 or $50 thereon; that Draham then told her it was all due and he expected it all; that she finally agreed to go to Tacoma and get the money, and that she would return on the 2d and pay the bill; that he told her he would not then be there, and she said without fail she would pay it to Miss Algier, who it appears was stenographer and bookkeeper for the respondent; that Mrs. Aldrich failed to pay the bill, and Draham finally gave it to respondent's attorney for collection. He further testified that no rent has since been paid. Mrs. Byron L. Aldrich, who testified as a witness for appellants, immediately following Draham, did not in any way contradict his testimony as to the time of these payments and demands for payment, nor was his testimony contradicted in this particular by any witness. She did not controvert her then acquiescence in his claim that the rent fell due on the first of the month.

On June 7, 1910, the respondent corporation, claiming that the appellants owed it $284, being $92 balance of May rent, and $192 June rent, served a notice upon them to pay this rent or quit. This notice remaining uncomplied with as to either alternative for three days, this action was begun. After trial, the court, on the 27th of September, 1910, made findings of fact and conclusions of law, and entered against the appellants and in favor of respondent a judgment of ouster, and for rent in the sum of $860, with interest at the legal rate on $92 from May 1st, 1910, and on $192 from June 1st, 1910, and on $192 from July 1st, 1910, and on $192 from August 1st, 1910, and on $192 from September 1st, 1910, and for costs, from which judgment this appeal was taken.

The first contention of the appellants is that the notice to quit or pay rent was premature, and that no rent was due the respondent on June 7, 1910, when the notice was served. This contention is based as to the $92 unpaid balance of rent for May, upon the fact that that sum was already due to W. H. Kneeland before the conveyance of the leased property to the respondent on May 16, 1910. As to this part of their contention, the appellants are correct. The deed to the respondent did not mention rents already due. The transfer of the reversion did not carry to respondent the rents already accrued, but only those subsequently accruing. 24 Cyc. 1173; *Kennedy v. Kennedy*, 66 Ill. 190; *Burden v. Thayer*, 3 Met. (Mass.) 76.

The rent for the month of June presents a question more difficult of solution. The appellants claim that since the lease provided that the rent was payable monthly in advance, and was dated February 11th, therefore, the rent was payable on June 11th for the month ending July 11th, and was not due when the notice was given on June 7th. The lease is not clear on this point. While it says the rent shall be payable monthly in advance, it does not contain the provision usual in such cases "monthly in advance on the first day of

each month," nor does it fix any other date for the beginning of the month for the purpose of payment, except as it might be inferred from the date of the lease, February 11th, or from the date of the commencement of the term, February 15th. It is, however, manifest from the record that the parties themselves construed the lease by their words and conduct as requiring payment to be made on the first day of each calendar month. In every instance of which we find any evidence as to the time of payment or of demand for payment, such payment was demanded on the first day of the calendar month, and in no instance was there any claim made by the appellants that such demand was premature. There is no evidence that any rent was ever paid or demanded on the 11th of any month. The receipt for the April rent, which appellants introduced in evidence, shows that the April rent was paid on April 1st. When the rent for June was demanded, Mrs. Aldrich made no protest or objection that it was not then due, merely stating that she did not then have the money, but offered to pay a part, and when this was refused, promised without fail to procure the money and pay it all on the following day. If all parties had not then clearly understood that the rent was payable on the first day of each calendar month, she would doubtless have refused to pay it, and insisted upon the additional eleven or fifteen days in which to raise the money. Neither of the appellants intimates that they, or either of them, ever questioned the right of respondent to demand rent in advance for each calendar month on the first day of such month.

Moreover, there is serious question as to whether this issue was intended to be raised by the pleadings. That the real issue sought to be raised by the answer was the contention that no rent was due because appellants had never been placed in possession of rooms which had been occupied by the United States Land Office, is apparent from the fact that the action was actually commenced by service of summons on June 14, 1910, after the time when they now contend the

rent for June became due: namely, June 11th, yet the answer alleges that no rent was due at the time of answer. At any rate, the case was evidently tried upon that theory, since the evidence of demand for the June rent on the first day of June was not objected to in any manner. It is, of course, the law that where a lease provides for payment of monthly rental, but fixes no time of the month for payment, the rent is due at the end of each month. But in such a case evidence of the conduct of the parties has been held admissible to show that they have construed the lease as requiring payment in advance on the first day of each month. *Ellis v. Rice*, 195 Pa. St. 42, 45 Atl. 655. Also, where a lease contained no stipulation as to when rent was payable, an agreement to pay quarterly was inferred from the fact that the lessor demanded it quarterly, and the tenant frequently had paid it so. *Long Island R. Co. v. Marquand*, 6 New York Legal Observer 160.

Inasmuch as the lease here in question does not name a specific day for the monthly payment, and the parties themselves have treated it as requiring payment monthly in advance on the first day of each calendar month, we think the appellants should be estopped to claim otherwise. Even if respondent was mistaken in making the demand for rent on the first of the month, it would be a manifest injustice now to allow the appellants to raise that objection, when they were absolutely silent at the time and, so far as the record shows, made no such definite contention at the trial. In all of the nineteen requests for findings filed by the appellants, not one asked the court to make any specific finding on this point or to construe the lease in this particular.

The appellants next claim that no rent was due, because they were not put in possession of the rooms vacated by the United States government, as provided in the memorandum of agreement hereinbefore quoted. These rooms were vacated by the government some time in the latter part of May, 1910, the exact date not being fixed by the evidence. It is urged that, since the consideration for the covenant of the

appellants to pay rent was the use of the premises, and the lessor wrongfully deprived them of this part of the premises, the consideration failed and the obligation ceased. It is true, as a general rule, that a wrongful eviction or deprivation of the tenant by the landlord of a substantial part of the demised premises discharged the tenant from the payment of the whole rent until the possession is restored, as announced in Taylor's Landlord & Tenant (9th ed.), § 378, and other authorities cited by appellants. But in this case the evidence fails to bring the parties within the rule. The evidence on this point is conflicting. It does not fairly show that the appellants ever made a demand for these rooms or ever offered to surrender the rooms which they held in lieu thereof. Mrs. Aldrich testified that she requested possession of these rooms from Miss Algier about the latter part of May when they were vacated by the government, and that Miss Algier answered that she had spoken to Mr. Draham about the rooms, that she did not know what he was going to do, and she would see him again. Mrs. Aldrich further testified that she at no time had any conversation with any one else representing the respondent in regard to this matter. The evidence shows that she saw Mr. Draham, the president and manager of respondent company, shortly after the rooms were vacated, but she does not claim to have said anything to him about the rooms when he demanded the June rent. She claims to have spoken to Miss Algier at other times, but this is contradicted by Miss Algier. We think the decided preponderance of the evidence shows that nothing amounting to a demand for possession of these rooms or an offer to surrender the rooms held in lieu of them was ever made. This defense must fail for lack of proof.

Finally, the appellants insist that the court erred in rendering judgment for $860, while the court's finding was that: ". . . there is now due and owing to this plaintiff the sum of two hundred and eighty-four ($284) dollars." The conclusions of law, however, contain a direction for

judgment for the full amount, and itemized as in the judgment rendered. It is not pretended that the appellants did not retain possession up to the time of trial on September 27th, 1910, nor is there any pretense that they have paid any rent since the payment of $100 on the rent for May, 1910. The evidence is uncontradicted that they have paid no rent since that time. The judgment is therefore amply supported by the evidence, except as to the $92 balance of the rent for May, which was due to Kneeland and not to respondent. The prayer of the complaint contains the following:

"Second: For a judgment in money of two hundred and eighty-four ($284) dollars with interest at 6% per annum on the sum of ninety-two ($92) dollars from the first day of May A. D. 1910, and interest at the rate of 6% per annum on $192 from the first day of June A. D. 1910, and for rent at the rate of $192 per month for all of the time during which said defendants may unlawfully remain in possession of said premises, together with interest thereon at the legal rate."

The judgment is in accord with the facts proved, except as to the $92, and with the prayer of the complaint. From the whole record, it is manifest that the judgment, with this exception, is correct. The cause is therefore remanded with direction that the judgment be modified in accordance with this opinion. Neither party will recover costs in this court.

DUNBAR, C. J., MORRIS, CHADWICK, and CROW, JJ., concur.