[No. 9635.   Department Two.   February 7, 1912.]

H. H. BURNS *et al., Respondents*, v. EDMUND DUFRESNE
*et al., Appellants.*[1]

LANDLORD AND TENANT—LEASE—COVENANTS—CONDITIONS—SUBLET-
TING.    Under a lease of a space to be used as a theater entrance,
covenanting that the same shall not be *assigned* without the writ-
ten consent of the lessor, and providing that the portion of the
premises not required for such purpose may be used by the lessee
for any lawful purpose, the lessee may sublet such portions without
the consent of the lessor; conditions against assignment and sub-
letting being strictly construed.

SAME — LEASE — CONSTRUCTION — AUTHORITY FOR ALTERATIONS IN
PREMISES.    Where a lease of ground floor to be used for a theater
entrance provided that the lessee may at his own expense install
heat, water, and light by such piping and wiring as may be neces-
sary, the lessee is authorized to bore holes in the floor and connect
with water pipes by way of an unoccupied basement, although the
basement was expressly reserved to the lessor, where it appears
that there was no other way to make the connections, which did
not in any way interfere with the lessor's reasonable use of the
basement.

LANDLORD AND TENANT — SUBLETTING—PURPOSES—REMEDIES—IN-
JUNCTION—WHEN LIES.    An injunction will not be granted at the
suit of the owner against a sublease for the purpose of maintaining

[1]Reported in 121 Pac. 46.

a cigar store and saloon, on the theory that no saloon license can
be granted without the owner's consent under Rem. & Bal. Code,
§ 6290, where the lease contained no restrictions; since plaintiff
can withhold his consent and prevent the issuance of the saloon
license, and the sublessee is entitled to conduct any other lawful
business on the premises.

Appeal from a judgment of the superior court for Spo-
kane county, Sullivan, J., entered March 3, 1911, upon find-
ings in favor of the plaintiffs, after a trial to the court, in an
action for an injunction and damages to leased premises.
Reversed.

*Wakefield & Witherspoon* (*A. C. Shaw* and *E. P. Twohy*,
of counsel), for appellants.

*Del Cary Smith*, for respondents.

CROW, J.—Upon November 1, 1909, the plaintiffs, H. H.
Burns and J. N. Thennes, owners of a building on the corner
of Post street and Front avenue, in the city of Spokane,
leased two storerooms on the ground floor to Shubert The-
ater. Company, a corporation, for five years.   At that time,
the lessee was erecting a theater building on the south side
of Front avenue, immediately to the rear of, and adjacent
to, the east line of, plaintiffs' building.   The purpose of the
lease was to provide a Post street entrance to the theater.
The trial court properly found that, with plaintiffs' consent,
the lease was assigned by the Shubert Theater Company to
the defendant American Building Company, a corporation.
The leased rooms had a frontage of forty-five and one-half
feet on Post street, and extended easterly to the west line of
the theater building.   The lessee was authorized to construct,
at its own expense, a theater entrance of such width as it
desired.   For such purpose, it was permitted to change or
move a partition between the two storerooms and construct
other partitions on either side of the entrance.   It was also
authorized to use and occupy, for any lawful purpose, that
portion of the leased area not used for the theater entrance.

Other provisions of the lease will be hereinafter mentioned. The American Building Company constructed a theater entrance eleven feet in width, separated by partitions from storerooms located on either side thereof within the leased area. When these rooms were ready for occupancy, the American Building Company as lessee sublet the south room to the defendant Edmund Dufresne, who intended to use the same for a cigar store and saloon. To make connections with the city water mains and sewer, Dufresne cut a few holes through the storeroom floor. Thereupon this action was commenced by plaintiffs, the original lessors, to enjoin the lessee from subletting to Dufresne, to enjoin him from cutting through the floors, or connecting with the city water mains and sewer, and to recover damages for changes already made. A restraining order was granted which, after a hearing upon the merits, was made permanent by the final decree. Plaintiffs were also awarded judgment for $10 damages and their costs. The defendants have appealed.

Respondents' principal contention is that the lessee had no power or authority to sublet the south room to Dufresne without their written consent, which was not granted. The clause upon which this contention is predicated reads as follows:

"The said party of the second part [the lessee] further covenants and agrees not to assign this lease nor to permit any other persons to improve the same or make or suffer any alterations therein except as herein stated, unless the written permission of the said parties of the first part shall have first been obtained in writing."

This is a covenant that the lease itself shall not be assigned, no reference to a subletting being made. The lease also provided that:

"It is further expressly understood and agreed that the said premises hereby demised are to be used by the said lessee, its successors and assigns, for a theater entrance to the theater in the rear of said premises, and that so much of said premises as may not be necessary or devoted to a theater

entrance hereinafter referred to may be used by said party of the second part for any lawful purpose."

This stipulation seems to contemplate a subletting for any lawful purpose, of that portion of the leasehold not converted into a theater entrance. The authorities are numerous to the effect that stipulations against an assignment of a lease, or against a subletting, are to be strictly construed. Discussing covenants not to assign or underlet, Taylor, in the ninth edition of his work on Landlord and Tenant, at § 403, says:

"Covenants of this description are construed by courts of law with the utmost strictness, to prevent the restraint from going beyond the express stipulation. If, therefore, the lessee covenants 'not to assign, transfer, set over,' or otherwise do, or put away the lease or premises, this does not prevent him from underletting. Nor will a covenant 'not to let or underlet the whole or any part' of the demised premises preclude an assignment of the whole interest."

Tiffany, in his work on Landlord and Tenant, at pages 921-2, says:

"Restrictions of this character, upon alienation by the lessee, are not favored and are, it is said, to be construed strictly, and a particular mode of alienation is, it has been stated in a leading case on the subject, not to be regarded as prohibited unless it is 'by words which admit of no other meaning.' Accordingly, a covenant or condition not to assign is not broken by the making of a sublease, and, in spite of a *dictum* to the contrary, the weight both of reason and authority is to the effect that a covenant not to sublet is not broken by an assignment."

A marked and well-recognized distinction exists between a covenant against an assignment of the entire lease, and a covenant against the subletting of a portion of the premises. An expressed covenant against the one privilege will not restrain the lessee from enjoying or exercising the other. Taking into consideration the two clauses above quoted, we conclude the lessee was entitled to sublet the south storeroom

6—67 Wash.

without the lessors' consent. *Spencer v. Commercial Co.*, 30 Wash. 520, 71 Pac. 53; *Cuschner v. Westlake*, 43 Wash. 690, 86 Pac. 148.

The lease, however, in express terms provides that:

"It is expressly understood and agreed by and between the parties hereto that the only portion of said building included in this lease is the first floor thereof as herein described so far as the same is embraced and included in the rooms known as No. 226 and 228, Post street, and extending east and west through said building, and that this lease does not include the basement below said first floor or any part of said building adjoining or above the part so rented."

It was alleged by respondents and shown by the evidence, that the appellant Dufresne, as sublessee, was installing water and sewer connections, and that in so doing he had bored a few holes through the floor of the south storeroom so that he might pass connecting pipes through the basement to the city mains. It is not contended, nor was it shown, that he could make the connections in any other manner. The lease authorized the lessee to make such changes within the area leased as might be necessary to construct the theater entrance, and in so doing to make changes in partitions on the first floor. It also provided:

"It is further understood and agreed by and between the parties hereto that the said party of the second part [the lessee] shall at its own expense furnish all the light, heat and water which it may use upon the premises hereby demised, and the said party of the second part hereby promises, covenants and agrees that in the installation of said light, heat and water such piping and wiring, or other work as may be necessary for such installation shall not interfere in any way with the balance of said building of the said parties of the first part, and not included in this lease, or with any other tenants in the said building."

Respondents contend that this stipulation prohibited the lessee from passing pipes through the basement to the water mains and sewer. There appears to have been no other way in which to make the connections and obtain the service.

The basement was unoccupied, and it was shown that the proposed connections would not interfere with any reasonable use to which it could be devoted. The lease expressly provides that the lessee shall obtain such service at its own expense. If connections are not to be made through the basement, they could not be made at all, and the lease would be inconsistent, as by one stipulation it would deprive the lessee of the enjoyment of rights expressly granted by another. It is a well-recognized principle in the law of landlord and tenant, that the lease of a portion of a building carries with it as incidental. thereto everything necessary to the reasonable use and enjoyment of the lease, and we are constrained to hold that the lessee did have the right to make reasonable water and sewer connections through the basement, that being the only manner in which they could be made.

Respondents, citing Rem. & Bal. Code, § 6290, insist that Dufresne could not lawfully conduct a saloon business in the south storeroom without first obtaining a license; that no such license could be obtained without respondents' written consent as owners, and that respondents are therefore entitled to an injunction to prevent the subletting. Respondents could have inserted a stipulation in the lease, prohibiting any saloon on the premises, but did not do so. If, as they contend, they can now prevent that business by refusing their written consent to the issuance of a license, they are at liberty to do so, and it is not necessary for them to come into a court of equity and enjoin a subletting to the appellant Dufresne. He intends to conduct a cigar store as well as a saloon. If the latter cannot be permitted, for want of a license, he would nevertheless be entitled to his sublease, so that at his election he might use the storeroom for the cigar business alone, or any other lawful business. Respondents contend that he cannot conduct a saloon without their written consent to a license. Conceding this to be true, he could conduct any other lawful business under his

sublease without their consent.   We find no equities in this case entitling respondents to an injunction, nor do we think they are entitled to damages for necessary work done in preparing to make connections with the water mains and sewer.

The judgment is reversed, and the cause remanded with instructions to dismiss the action.

Dunbar, C. J., Chadwick, Morris, and Ellis, JJ., concur.