[No. 45753. En Banc. August 23, 1979.]

LOUIS P. ESMIEU, ET AL, *Petitioners*, v. JACK HSIEH, ET AL, *Respondents.*

*LeSourd, Patten, Fleming & Hartung, Leon C. Misterek, Edwards, Wetherall & Barbieri, Malcolm L. Edwards,* and *Robert G. Austin,* for petitioners.

*Leavy, Taber, Schultz, Bergdahl & Sweeney, John G. Schultz,* and *Andrew C. Bohrnsen,* for respondents.

DOLLIVER, J.—This is the second of three cases involving the same parties and the same property. This case, Esmieu II, comes to us on a petition to review a decision of the Court of Appeals. *Esmieu v. Hsieh,* 20 Wn. App. 455, 580 P.2d 1105 (1978). *See also Esmieu v. Schrag (Esmieu* I), 88 Wn.2d 490, 563 P.2d 203 (1977).

Esmieus, both as individuals and through a family trust, own over 15,700 acres of agricultural land. They desired to generate more family income by diversifying their holdings and executed two agreements with Jack Hsieh. The first, executed in December 1973, was to exchange about 9,000 acres (Tract A) for other real estate which Hsieh would provide. The second agreement (Agreement), at issue in this case, executed in March 1974, consisted of a lease and option to exchange. It provided for plaintiffs to lease another 6,700 acres (Tracts B and C) to Hsieh for about 20 years, with rent increases upon specific occurrences, and

further provided Hsieh with an option to purchase these tracts by exchanging other real estate with specified values. Hsieh, by securing water permits and performing other necessary tasks, was to provide irrigation for the leased land. Esmieus were required to cooperate fully in this endeavor. Provision was also made for a 60–day notice of claimed default, and for termination of the lease if default should remain uncured.

Tracts A, B and C were already subject to leases to Charles Maiden. The Agreement required Esmieus to negotiate promptly for termination of the leases and to bear all expenses in order that Hsieh could take possession of the land as soon as possible. Hsieh negotiated directly with Maiden for a partial termination of the Maiden leases and agreed to bear some of the costs himself in order to facilitate termination. He delivered the termination agreement to the Esmieus' attorney for their signatures. The signed termination agreement was never returned to him; in fact, Hsieh did not even know it had been signed until just before trial. The trial court found that the failure of the Esmieus to deliver the signed Maiden lease termination to Hsieh constituted a breach of the Agreement; the Court of Appeals found that Hsieh could not enter the property to fulfill the requirements for obtaining water permits because of the Esmieus' failure to complete the termination of Maiden's lease. The Esmieus claim that the signed release was placed in escrow and that Hsieh voluntarily and independently abandoned his efforts to obtain water permits. The permit applications were eventually canceled in April 1975.

Hsieh paid the rent installment of October 1, 1974. Due to uneasiness arising from Esmieus' procrastination, the January 1, 1975, rent payment was made to Esmieus' attorney, conditioned upon their faithful performance of their Agreement obligations. Esmieus gave notice of default for nonpayment of rent and failure to provide irrigation to the property. After 60 days, they took the position that the Agreement was terminated because the alleged defaults

remained uncured. In June 1975, they leased Tract A to International Pelleting Company (IPC) for 40 years, despite a provision in the Agreement which prohibited an assignment of any interest in Tracts A, B and C without Hsieh's consent.

Thereafter, the Esmieus brought this action to quiet title; Hsieh counterclaimed for specific performance of the Agreement and damages. The trial court denied Esmieus' claims and ordered specific performance. The trial court found that Hsieh's obligation to pay rent after January 1, 1975, had been suspended because of the Esmieus' lack of cooperation as required by the Agreement and by "their inter–family agreement to actively block or thwart Dr. Hsieh's performance". The court ordered the return to Hsieh of $22,500 which had been paid into the court registry as rental payments during the litigation period.

Two major issues are before us. The first pertains to the Esmieus' claim that their covenant to cooperate in obtaining water permits is independent of Hsieh's covenant to pay rent and secure the permits. They assert that, even if their failure to terminate the Maiden lease is found to be a breach of the Agreement, they were still entitled to cancel the lease and receive a judgment quieting their title.

■■ In 1909, we held that courts must look to an agreement as a whole to determine whether covenants are mutual and dependent or independent. *Toellner v. McGinnis*, 55 Wash. 430, 104 P. 641 (1909). The trial court found, and the evidence supports the finding, that Hsieh had an overall development plan for all of the property involved in the agreements between the parties. The land was virtually worthless without irrigation. The intent of the parties was that Hsieh develop the property after irrigation was provided but irrigation could not be provided until water permits were granted. Hsieh's duty to obtain the permits was necessarily dependent upon Esmieus' promise to cooperate in securing those permits. Similarly, Hsieh's covenant to pay rent was dependent upon Esmieus' covenant to secure termination of Maiden's leasehold. The

Esmieus' frustration of the basic purpose of the Agreement excused Hsieh's duty to make unconditional rental payments. *Kneeland Inv. Co. v. Aldrich,* 63 Wash. 609, 116 P. 264 (1911); *Toellner v. McGinnis, supra.*

The second issue concerns the 40–year lease of Tract A to IPC. The final paragraph of the Agreement reads:

> This Lease and Option Agreement shall inure to the benefit of and is binding upon the heirs, executors, administrators, personal representatives and assigns of each of the parties signatory hereto; PROVIDED, Esmieus shall not, jointly or severally assign any interest in the lands described upon Annexes "A", "B" or "C", without written consent of Hsiehs or Court Order.

Both the trial court and the Court of Appeals found the IPC lease to be a breach of the Agreement and ordered the Esmieus to negotiate a termination of that lease. The Esmieus contend the "no assignment" clause did not prohibit a lease and even if it did the clause is violative of public policy.

 Plaintiffs call our attention to a number of cases involving prohibitions against assignment or subleasing. *Coulos v. Desimone,* 34 Wn.2d 87, 208 P.2d 105 (1949); *Willenbrock v. Latulippe,* 125 Wash. 168, 215 P. 330 (1923); *Burns v. Dufresne,* 67 Wash. 158, 121 P. 46 (1912). These cases are concerned with the ability of a *tenant* to sublease the property or assign the lease. None of them deals with the right of a landlord to lease to a third party the very property which is the subject of an agreement between the landlord and tenant. However, each states that a no–assignment clause must be strictly construed. We agree, but hold that a strict construction not only of the no–assignment clause but of the entire Agreement shows beyond question that allowing the Esmieus to assign or lease Tract A was totally inconsistent with the intent of the parties and in the language of the trial court "in direct violation of the terms and provisions of the Lease and Option to Exchange Real Estate".

Finally, Esmieus urge that, since IPC was not joined in this action, the trial court could not order the cancellation of the IPC lease. But, as the Court of Appeals correctly observed, the trial court in no way violated the rights of IPC. Rather, the trial court recognized those rights and ordered that IPC's lease be bought out by the Esmieus.

The trial court, sitting in equity, reviewed the complex factual matters involved in this case and fashioned broad remedies to do substantial justice to the parties and put an end to the litigation. The trial court neither exceeded its authority nor abused its discretion. The judgment of the trial court and the decision of the Court of Appeals are affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.